UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KIMBERLY KNIGHT,

        Plaintiff,

    v.

FRANK BISIGNANO, Commissioner of Social Security,

        Defendant.

Case No.  2:25-cv-1581-JDP (SS)

ORDER

Plaintiff challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act.  Both parties have moved for summary judgment.  ECF Nos. 12 & 14.[1]  For the reasons discussed below, I will grant plaintiff's motion, deny the Commissioner's, and remand for further proceedings.

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct

---

[1] Plaintiff has also moved for an extension of time to file her reply.  ECF No. 15.  This motion will be granted, and her reply, filed at ECF No. 16, is deemed timely.

1

legal standards have been applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process, the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

On April 6, 2022, plaintiff filed an application for a period of disability and DIB, alleging disability beginning December 15, 2010. Administrative Record ("AR") 308-309. Her applications were denied initially and on reconsideration. *Id.* at 167, 189. Plaintiff requested and

received a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 108-26.[2]  On May 16, 2024, the ALJ issued a decision denying plaintiff's disability claims. *Id.* at 17-30.

Specifically, the ALJ found:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2016.

   * * *

2. The claimant did not engage in substantial gainful activity during the period from the amended allege onset date of April 16, 2015, through her date last insured of September 30, 2016.

   * * *

3. Through the date last insured, the claimant had the following severe impairments: Systemic lupus erythematosus; panic disorder; depression; and anxiety.

   * * *

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

   * * *

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is able to lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; she is able to sit for 8 hours of an 8-hour workday with normal breaks; she requires a sit/stand option to change position every 30 minutes, without leaving her workstation; she can stand for 6 hours of an 8-hour day without prolonged standing or walking; she can stand or walk for 20 minutes at one time; she is not able to climb ladders, ropes, and scaffolds; and she is able to occasionally stoop, crouch, crawl, and kneel.  Mentally, she is able to receive, understand, remember, and carry out simple job instructions; she can occasionally do the same with detailed instructions; she cannot follow complex job

---

[2] Plaintiff also had an earlier hearing in December 2023, which was postponed to allow her to obtain counsel.  AR 92-93.

3

instructions; she is able to occasionally interact appropriately with the general public; she is able to adjust to simple changes in the workplace; and she is able to make simple workplace judgments.

* * *

6. Through the date last insured, the claimant was unable to perform any past relevant work.

* * *

7. The claimant was born on [redacted], and was [redacted] years old, which is defined as an individual closely approaching advanced age, on the date last insured.

8. The claimant has at least a high school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs in significant numbers in the national economy that the claimant could have performed.

* * *

11. The claimant has not been under a disability, as defined by the Social Security Act, at any time from April 16, 2015, the amended alleged onset date, through September 30, 2016, the date last insured.

AR 20-29 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, which denied the request. AR 1-3. She now seeks judicial review under 42 U.S.C. §§ 405(g).

## Analysis

Plaintiff raises four arguments. She claims that: (1) the ALJ failed to properly assess [her] allegations regarding her pain and limitations; (2) the vocational evidence lacks support as it is inconsistent with [Social Security Administration] authority; (3) the ALJ found that [plaintiff] had a moderate limitation in concentration, persistence, and pace, but failed to include a limitation to this effect in the residual functional capacity; and (4) the ALJ improperly rejected third party

4

evidence because it was not derived from medical professionals.  ECF No. 12 at 2, 7-21.  I find plaintiff's first argument persuasive and need not consider the others.  I will, for the reasons stated below, remand this matter for additional proceedings.

Plaintiff testified that she applied for disability primarily because of her lupus and chronic pain associated therewith.  AR at 113.  She stated that lupus caused pain in her lower back and skin.  *Id.* at 115.  Plaintiff testified that, during the relevant period, her symptoms prevented her from sitting, standing, or walking for more than thirty minutes at a time.  *Id.* at 116-17.  She also alleged that she suffered from anxiety and depression.  *Id.* at 118-19.

To evaluate a claimant's subjective testimony, an ALJ must engage in a two-step process.  First, an ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged . . . [plaintiff] need only show that it could reasonably have caused some degree of the symptom."  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Second, absent evidence of malingering, an ALJ must offer "specific, clear and convincing reasons" for rejecting a claimant's testimony.  *Id.* at 1014-15.

Here, the ALJ found that her impairments could reasonably be expected to cause her symptoms, but that her statements regarding the "intensity, persistence, and limiting effects" of these issues were not entirely consistent with the medical and other evidence of record.  AR at 25.  He noted that "the clinical examination findings do not fully corroborate" her subjective testimony.  *Id.*  The ALJ emphasized that the medical records showed that plaintiff's symptoms were "relatively well controlled when complaint (sic) with medication."  *Id.*

I begin by noting that the ALJ relies on a series of provider encounters ranging in date from July 2015 to February 2017, though he acknowledges that this final listed encounter occurred outside the last insured date.  *Id.* at 23-24.  These encounters are, in some cases, little more than a summation of the provider's findings without any analysis by the ALJ explaining why the record undercuts plaintiff's testimony.  For instance, the ALJ summarized the following encounters, beginning in November 2015:

> Later in November, the claimant received a referral for acupuncture for her lower back pain and bilateral hip pain. The claimant underwent one session of acupuncture in December of 2015. The claimant was next seen in April of 2016 where she indicated she experienced pain and anxiety due to her lupus and was gaining weight due to her activity. She was recommended by her provider to engage in mild weight workouts and walking daily.

*Id.* at 24 (internal citations to AR omitted). This series of encounters is not obviously positive, and it is unclear how the ALJ expects the reader to interpret it. One straightforward interpretation is that plaintiff was suffering pain in November 2015 and, months later, in April 2016, had not seen significant improvement.

Similarly, the ALJ summarized this 2017 encounter occurring outside the last insured date:

> The next encounter for the claimant's systemic lupus was not until February 2017, after the date last insured. I reviewed this encounter with providers, in which the claimant complained of a flare up of her left trochanteric bursitis, worsening chronic pain in her back and from her lupus. The claimant told her provider at this time that Plaquenil had helped her lupus symptoms, but she stopped taking it. In addition, she had stopped taking her prescribed gabapentin after 2 doses indicating she saw no results.

*Id.* It may be inferred that the ALJ is faulting plaintiff for not continuing to take Plaquenil, though her reason for doing so is not evident in either the provider notes or the ALJ's opinion. The rest of the summary is predominantly negative, however, and not contradictory of plaintiff's subjective testimony.

Other cited records fail to lend significant support to the ALJ's rejection of plaintiff's testimony. For instance, the ALJ cites records from August 28, 2015, and writes, "[o]ther than her complaints of radiating pain down the right lateral leg, her physical examination was unremarkable, she was alert, well appearing, in no distress, she could forward bend with fingertips 8 inches from the floor, and she walked with a normal gait." *Id.* No doubt many symptoms, even severe ones, can be dispensed with or minimized by a compartmentalizing "other than." Additionally, the provider still references plaintiff's complaints about chronic back pain. *Id.* at 133. Other records from November 2015 do, as the ALJ writes, indicate that her skin

6

was improved by Plaquenil, with no new lesions or sores. *Id.* at 24, 131. Those same records, however, state that plaintiff was still wrestling with chronic back pain, using heating pads and ice packs daily. *Id.* at 131. Finally, regarding her mental health symptoms, the ALJ writes that, in September 2015, plaintiff's provider informed her that additional refills for an anxiety medication could not be provided because she had not been seen for more than a year. *Id.* at 24, 132. Plaintiff was unable to keep an appointment on September 22, 2015. *Id.* at 132. The ALJ does not explain how these notes undercut plaintiff's subjective testimony. The obvious inference is that plaintiff should be faulted for failing to maintain contact with her provider, but there is no analysis to that effect, and it is unclear why plaintiff failed to follow up. The notes do state that plaintiff was opposed to long term use of the anti-anxiety medication Lorazepam, but, again, the reason for this opposition is not stated. *Id.*

I acknowledge that the ALJ does attempt, in a general manner, to draw these medical record summaries together into a general finding that "[plaintiff's] symptoms have been relatively well controlled when complaint (sic) with medication." *Id.* at 25. But, as explained above, the records are replete with evidence that this was not the case or, at least, not the case for all her symptoms. In so finding, I do not imply that the ALJ's conclusion is indefensible based on the record, only that he has failed to offer adequate analysis to support it. Again, the rejection of a plaintiff's subjective testimony "must be supported by clear and convincing reasons why the claimant's testimony of excess pain was not credible, and must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). I note that "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (alteration in original). And, ultimately, to provide a clear and convincing rationale, an ALJ must "show his work." *Id.* at 499. Here, he has not adequately done so.

I find that remand is appropriate so that the ALJ may reassess plaintiff's subjective allegations. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case

for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted); *Treichler*, 775 F.3d at 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 12, is GRANTED.

2. The Commissioner's cross-motion for summary judgment, ECF No. 14, is DENIED.

3. Plaintiff's motion for extension of time, ECF No. 15, is GRANTED, and her reply, ECF No. 16, is deemed timely.

4. The matter is remanded for further proceedings consistent with this order.

5. The Clerk of Court is directed to enter judgment in plaintiff's favor and close this case.

IT IS SO ORDERED.

Dated:    July 8, 2026    _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

8